## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| **LATIFA BENALI,** | § | |
| *Plaintiff*, | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 4:21-cv-922** |
| | § | |
| **COLLIN COUNTY, TEXAS,** | § | |
| *Defendant.* | § | |

## <u>PLAINTIFF'S ORIGINAL COMPLAINT</u>

Respectfully submitted,

*/s/ Scott H. Palmer*       
SCOTT H. PALMER,
Texas Bar No. 00797196

*/s/ James P. Roberts*       
JAMES P. ROBERTS,
Texas Bar No. 24105721

SCOTT H. PALMER, P.C.
15455 Dallas Parkway, Suite 540
Addison, Texas 75001
Telephone: 214.987.4100
Facsimile: 214.922.9900
scott@scottpalmerlaw.com
james@scottpalmerlaw.com

COUNSEL FOR PLAINTIFF

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. 3

SUMMARY ...................................................................................................... 6

I.   Parties ...................................................................................................... 7

II.  Jurisdiction and Venue ............................................................................ 7

III. Facts and Allegations .............................................................................. 7

IV. Causes of Action ..................................................................................... 16

   Count I -  Violation of the Religious Land Use and Institutionalized Persons Act ...... 16

   Count II -  Practice and Custom of Deliberate Indifference ......................................... 20

   Count III - Free Exercise of Religion ............................................................................ 30

   Count IV - Equal Protection Violation ......................................................................... 31

V.   DAMAGES ............................................................................................... 33

VI.  ATTORNEY'S FEES ................................................................................ 34

VII. JURY REQUEST ..................................................................................... 34

PRAYER ......................................................................................................... 34

## TABLE OF AUTHORITIES

**CASES**

*Adkins v. Kaspar,*
 393 F.3d 559, 564 (5th Cir. 2004) ................................................................................17

*Alvarez v. City of Brownsville,*
 904 F.3d 382, 390 (5th Cir. 2018) .............................................................................. 22

*Bell v. Wolfish,*
 441 U.S. 520, 535 (1979) ............................................................................................. 23

*Burge v. Saint Tammany Par.,*
 336 F.3d 363, 370 (5th Cir. 2003) ............................................................................. 22

*City of Oklahoma City v. Tuttle,*
 471 U.S. 808, 823 (1985)........................................................................................26, 28

*Covington v. City of Madisonville, Tex.,*
 812 F. App'x 219, 225 (5th Cir. 2020)...................................................................20, 22

*Edler v. Hockley Cnty. Comm'rs Ct.,*
 589 F. App'x 664, 669 (5th Cir. 2014) ...................................................................... 24

*Estate of Bonilla v. Orange Cnty.,*
 982 F.3d 298, 308 (5th Cir. 2020) ............................................................................. 20

*Evans v. City of Marlin, Tex.,*
 986 F.2d 104, 108 (5th Cir.1993) ............................................................................... 22

*Flores v. Cnty of Hardeman, Tex.,*
 124 F.3d 736, 738 (5th Cir 1997)................................................................................ 20

*Garza v. City of Donna,*
 922 F.3d 626, 632 (5th Cir. 2019)............................................................................... 23

*Hare v. City of Corinth,*
 74 F. 3d 633, 644–45 (5th Cir. 1996)..............................................................23, 24, 26

*Hicks–Fields v. Harris Cty.,*
 860 F.3d 803, 808 (5th Cir. 2017)........................................................... 25, 26, 31, 33

*James v. Harris Cnty.,*
 577 F.3d 612, 617 (5th Cir. 2009)........................................................................ passim

*Malone v. City of Fort Worth,*
 297 F. Supp. 3d 645, 654 (N.D. Tex. 2018) ............................................................. 25

*Monell v. Dep't of Soc. Servs. of City of New York,*
   436 U.S. 658, 690 (1978) ............................................................................. passim

*Montano v. Orange Cnty., Tex.,*
   842 F.3d 865, 875 (5th Cir. 2016).................................................................24

*Olabisiomotosho v. City of Houston,*
   185 F.3d 521, 526 (5th Cir. 1999) .................................................................21

*Opulent Life Church v. City of Holly Springs, Miss.,*
   697 F.3d 279, 290 (5th Cir. 2012).................................................................19

*Pembaur v. City of Cincinnati,*
   475 U.S. 469, 479 (1986)...............................................................................20

*Pena v. City of Rio Grande City,*
   879 F.3d 613, 623 (5th Cir. 2018) .................................................................25

*Piotrowski v. City of Houston,*
   237 F.3d 567, 579 (5th Cir. 2001) ...............................................21, 22, 25

*Rhyne v. Henderson Cnty.,*
   973 F.2d 386, 392 (5th Cir. 1992)................................................................22

*Ruplinger v. Louisville/Jefferson Cty. Metro Gov't.,*
   No. 19 Civ. 583 (W.D. Ky. 2019) ..................................................................16

*Sanchez v. Young Cnty., Tex.,*
   866 F.3d 274, 279 (5th Cir. 2017) .................................................... passim

*Scott v. Moore,*
   114 F.3d 51, 53 (5th Cir. 1997)......................................................................21

*Shepherd v. Dallas Cnty.,*
   591 F.3d 445, 452, 454–55 (5th Cir. 2009) .........................................23, 24

*Thompson v. Upshur Cnty.,*
   245 F.3d 447, 459 (5th Cir. 2001)................................................................22

*Turner v. Safley,*
   482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987) ......................................17

*Webster v. City of Houston,*
   735 F.2d 838, 841 (5th Cir.1984) ..................................................................25

*Williams v. Kaufman County,*
   352 F.3d 994, 1013 (2003) ......................................................... 26, 31, 32, 33

*Zarnow v. City of Wichita Falls, Tex.*,
  614 F.3d 161, 166 (5th Cir. 2010) ................................................................. 25

**OTHER AUTHORITIES**

https://ru.usembassy.gov/u-s-citizen-services/passports/photos/ (last accessed
  November 11, 2021)..................................................................................... 13

https://www.nytimes.com/2018/02/28/nyregion/muslim-hijab-nypd.html (last
  accessed November 11, 2021)...................................................................... 15

https://www.pressherald.com/2016/09/14/sheriffs-office-apologizes-for-improperly-
  releasing-photos-of-muslim-protesters/ (last accessed November 11, 2021) .............. 15

https://www.uscis.gov/sites/default/files/document/memos/Accommodating%20Relig
  ious%20Beliefs%20PM.pdf (last accessed November 11, 2021) .................................. 13

Ted Hennessey, *Woman Allegedly Forced To Remove Hijab for Mugshot Gets
  $120,000 Settlement*, Evening Standard, Dec. 18, 2019,
  https://www.standard.co.uk/news/world/muslimwoman-in-minnesota-gets-120-
  000-settlement-after-allegedly-being-forced-to-remove-her-hijab-for-
  mugshota4316801.html (last accessed November 11, 2021).......................................... 16

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

COMES NOW, LATIFA BENALI, Plaintiff, complaining of COLLIN COUNTY, TEXAS, and for causes of action will respectfully show unto the Court as follows:

## SUMMARY

Plaintiff Latifa Benali's claims arise out of the religious discrimination she suffered during her detention in the Collin County Jail in November of 2019. Collin County violated her constitutional rights under the First and Fourteenth Amendments to United States Constitution and the Religious Land Use and Institutionalized Persons Act, by substantially burdening and interfering with Plaintiff's right to freely exercise her sincerely held religious belief by refusing to accommodate her religious dress – her hijab.

Ms. Benali holds a strong and sincere religious belief in the practice of wearing hijab and dressing modestly. Ms. Benali wears hijab in the form of a scarf, covering her hair, ears, and neck, and also wears modest clothing to complete the obligation of dressing modestly. Upon being booked into the Collin County Jail, Ms. Benali was directed to remove her hijab, over her protests, and instructed that it was the jail's policy that all inmates must remove all articles of clothing – including those worn as hijab. Following the removal of her head covering, Ms. Benali was seen by numerous men inside of the jail, had her mugshot taken which was later posted to the internet, and forced to remain without her head covering during her detention until she bonded out the following day. The criminal case against Ms. Benali was not even accepted by the Collin County District Attorney's office.

Plaintiff now files this lawsuit against Collin County, Texas for violating her constitutional rights under the First and Fourteenth Amendments to the United States Constitution and the Religious Land Use and Institutionalized Persons Act.

## I.
## Parties

1.      Plaintiff Latifa Benali is an individual residing in Collin County, Texas.

2.      Defendant Collin County, Texas is a political subdivision in the State of Texas located in the Eastern District of Texas. Collin County, Texas can be served through its County Judge, Chris Hill, at 2300 Bloomdale Rd., Suite 4192, Mckinney, TX 75071, or wherever he may be found.

## II.
## Jurisdiction and Venue

3.      The Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 1343 since Plaintiff is suing for relief under 42 U.S.C. § 1983 and 42 U.S.C. § 2000CC et seq.

4.      Venue is proper in the Eastern District of Texas pursuant to 28 U.S.C. § 1391 because all or a substantial part of the causes of action accrued in the Eastern District of Texas.

## III.
## Facts and Allegations

5.      At all times relevant to this lawsuit, Plaintiff Latifa Benali was being held as a pre-trial detainee in the Collin County Adult Detention Facility ("Collin County Jail").

6.      At all times relevant to this lawsuit, Defendant Collin County, Texas ("Collin County" or "County") operated the Collin County Jail where Ms. Benali was detained.

### Ms. Benali's Sincerely Held Religious Beliefs in Islam

7.      Ms. Benali is a Muslim woman who holds a strong and sincere religious belief in Islam.

8.      In Islam, hijab (hijab translates to a barrier) is the principle of promoting decency and modesty in interactions between members of the opposite sex. The concept of modesty pertains to both men and women.

9.      In particular, hijab refers to the modest style of dressing for Muslim women where they are mandated to cover their hair. Additionally, Muslim women are required to dress in modest clothing which covers their body except face, hands, and feet.

10.     Ms. Benali holds a strong and sincere religious belief in the practice of wearing hijab and dressing modestly. Ms. Benali wears hijab in the form of a scarf, covering her hair, ears, and neck, and also wears modest clothing to complete the obligation of dressing modestly.

11.     Hijab must be worn in public, and Ms. Benali may only remove her hijab to reveal her hair and neck in front of certain men like her husband, son, father in law, father, uncles, and grandfather.

12.     Ms. Benali wears hijab in public as a representation of her love, gratitude, obedience, and hope in her Lord. She considers the wearing of these garments a religious mandate.

13.     Wearing hijab is a significant aspect of Ms. Benali's Islamic faith. Not being allowed to wear hijab while in public substantially interferes with and substantially burdens Ms. Benali's ability to practice her Islamic faith.

14.     Not being permitted to wear hijab in public, causes Ms. Benali to feel embarrassed, unsafe, dehumanized, and disconnected with her faith.

## Ms. Benali was Arrested While Wearing Hijab

15.     On November 26, 2019, Ms. Benali and her husband had an altercation at their home.

16.     Ms. Benali's husband called the police in an effort to help them resolve the issue – but not with the intent that Ms. Benali would be arrested.

17.     When the police arrived, Ms. Benali was upstairs in her room with her hijab on in the form of a scarf covering her hair, ears, and neck.

18.     The police officers ended up handcuffing Ms. Benali and taking her to the Collin County Jail.

19.     The entire time Ms. Benali was being transported to the Collin County Jail, she was wearing her hijab.

**At the Collin County Jail, Ms. Benali was Forced to Remove Her Hijab Pursuant to Collin County Policies, Practices, and Customs**

20.     Upon arrival at the Collin County Jail, Ms. Benali was directed to remove her hijab by a female jailer.

21.     The female jailer told Ms. Benali she had to remove her head scarf.

22.     The female jailer told Ms. Benali, "we don't let anyone in with something on their head."

23.     When the female jailer said "we" she was referring to Collin County and the Collin County Jail.

24.     Ms. Benali explained to the jailor she could not take it off due to religious reasons.

25.     The female jailer responded that it "did not matter" and that they "did not have anyone in the jail with something on their head."

26.     This interaction and the statements by the female jailer demonstrate that Collin County had a policy prohibiting Muslim women from wearing hijab, specifically by way of head scarfs when detained in the Collin County Jail.

27.     Alternatively, this interaction and the statements by the female jailer demonstrate that Collin County had a practice or custom of prohibiting Muslim women from wearing hijab, specifically by way of head scarfs when detained in the Collin County Jail. The female jailer did not simply say that Ms. Benali couldn't wear her hijab, but that they don't let "anyone" into the jail "with something on their head." This implies that others have attempted to wear something on their head such as Ms. Benali and were told no.

28.     Alternatively, this interaction and the statements by the female jailer demonstrate that Collin County failed to train its employees and officers that Muslim women are allowed to wear hijab, specifically by way of head scarfs when detained in the Collin County Jail.

29.     Ms. Benali was thus forced to remove her hijab.

30.     Collin County's policy prohibiting Muslim women, such as Ms. Benali in this case, from wearing hijab was a conscious decision by the Collin County policymaker – the sheriff – to violate these inmate's constitutional rights and rights to religious freedom.

31.     Collin County's policy prohibiting inmates from wearing hijabs was a blanket prohibition which did not allow Ms. Benali to wear her hijab even in her cell or at a religious service; but instead, barred her from freely practicing her religion without any accommodation, despite there not being any penological or legitimate governmental need for such a blanket prohibition.

### Numerous Men Saw Ms. Benali Without Her Hijab

32.     Ms. Benali's mugshot was then taken—without her hijab—by a **male** jailer.

33.     Ms. Benali felt great shame and embarrassment being seen and photographed by a **male** jailer without her hijab.

34. Ms. Benali was then given clothing to change into, which included a short sleeve shirt and long pants.

35. However, Ms. Benali was not given back her hijab.

36. Ms. Benali is used to dressing modestly, which includes wearing long sleeve shirts.

37. Ms. Benali again uncomfortably wore a short sleeve shirt, where her bare arms were visible the entire time.

38. Ms. Benali had to wait in the book-in area without her hijab and while wearing a short sleeve shirt for a long period of time.

39. While in the book-in area several **male** jailers and **male** prisoners saw Ms. Benali without hijab and wearing a short sleeve shirt.

40. Ms. Benali finally – after a long period of waiting and being seen by numerous **males** without hijab and in a short sleeve shirt – saw the judge.

41. When seeing the judge, Ms. Benali again came in contact with several **men**.

42. Ms. Benali also had to get fingerprinting done.

43. The fingerprinting was done by a **male** jailer who saw her without hijab and in a short sleeve shirt.

44. After the fingerprinting, Ms. Benali was forced to take a shower.

45. Thankfully, Ms. Benali did not see any men while she was showering.

46. After showering, Ms. Benali was then given items to sleep if needed.

47. Ms. Benali saw a **man** bring in other women in the female only area of the jail.

48. Thus, even while in the female only area of the jail, Ms. Benali came in contact with other **men** without wearing hijab and while only wearing a short sleeve shirt.

49.     None of the **men** who saw Ms. Benali in the Collin County Jail without hijab and in a short sleeve shirt were Ms. Benali's husband, son, father-in-law, father, uncle, or grandfather.

50.     The next day when Ms. Benali's husband bonded her out of the Collin County Jail, she was given her property, which included her hijab.

51.     Ms. Benali immediately put her hijab on once she had access to her property.

52.     As a direct and proximate result of Collin County's policies and practices of prohibiting Muslim women from being permitted to wear hijab or dress modestly despite being forced to have numerous interactions with **male** jailers, Ms. Benali felt embarrassed, unsafe, dehumanized, and disconnected with her faith, resulting in severe emotional distress.

53.     After forcing Ms. Benali to remove her hijab for her booking photograph and remain without her hijab during the duration of her time in custody at the Collin County Jail, Defendant Collin County released the photograph of Ms. Benali without her hijab to be viewed online for anyone, including men outside of her immediate family, to see.

54.     The posting of her photograph without her hijab has caused Ms. Benali to feel additional and continuing embarrassment, shame, and a disconnect with her faith, resulting in severe emotional distress.

55.     These injuries were not caused by any other means.

**Federal, State, and Local Governments Across the United States Recognize the Religious Interest in the Hijab and Permit it to be Worn in Official Photographs and in Custody**

56.     Collin County's policy, practice, and custom prohibiting Muslim women from wearing hijab in the Collin County Jail and in Book-in photographs contravenes national norms and practices.

57.     From the federal to the local level, government and law enforcement entities recognize the significant constitutional and statutory interests at play and permit those in custody to wear religious head coverings for the purpose of official photographs.

58.     The United States Department of State permits those who wear hats or head coverings for religious reasons to keep those coverings on in official passport photographs. The Department of State website allows those being photographed to wear a religious hat or head covering if they "submit a signed statement that verifies that the hat or head covering in [the person's] photograph is part of recognized, traditional religious attire that is customarily or required to be worn continuously in public."[1]

59.     Similarly, the United States Citizenship and Immigration Services ("USCIS") issued a policy memorandum on July 23, 2012, that permits religious head coverings to be worn in photographs. The memorandum states that "USCIS will accommodate an individual who wears headwear as part of their religious practices."[2] Should a head covering cast a shadow over the wearer's face or otherwise obscure part of their face, USCIS will "ask an individual to remove or adjust portions of religious head wear that covers all or part of the individual's face." In this situation, USCIS will offer the

---

[1] Available at https://ru.usembassy.gov/u-s-citizen-services/passports/photos/ (last accessed November 11, 2021).
[2] Available at
https://www.uscis.gov/sites/default/files/document/memos/Accommodating%20Religious%20Beliefs%20PM.pdf
(last accessed November 11, 2021).

wearer a private room or screened area in which to adjust their head covering as well as a photographer of their gender. The religious head covering in question "is allowed to cover the ears if USC IS can still identify the individual."

60.     Ms. Benali's passport photograph shows her wearing hijab.

61.     Ms. Benalie's driver's license photograph shows her wearing hijab.

62.     Law enforcement officials across the country have likewise recognized the right of citizens to wear hijabs or other religious head coverings while being photographed for official government purposes.

63.     In Dearborn Heights, Michigan, the Police Department changed its booking procedures in July 2015 after a woman was forced to remove her hijab in the presence of men during the booking photograph and while in custody. The Police Department implemented reform after that woman filed suit alleging violations of her religious rights. According to the updated policy, Muslim women are not required to remove religious head coverings like hijabs for any booking photograph. At least one additional lawsuit has been settled under the new policy, which recognizes the substantial religious interests of women who wear hijabs.

64.     In Long Beach, California, the City Council approved a July 2017 settlement between a woman required to remove her hijab for a post-arrest photograph and the Long Beach Police Department that amended the Department's official policy so as to accommodate persons who wear religious head coverings. The Department is no longer permitted to forcibly remove the hi jabs of female arrestees at any point while they are in custody.

65.     In amending its policy, Long Beach joined two neighboring jurisdictions, San Bernardino County and Orange County, which adopted policies protecting detainees

who wear religious head coverings following lawsuits that settled in 2008 and 2013 respectively.

66.    In Hennepin County, Minnesota-the county that includes Minneapolis the Sheriff's Office implemented a new policy for inmates at the Hennepin County Jail and those in custody throughout Hennepin County in March 2014. The policy permits female arrestees to keep their hijabs on while a booking photograph is taken, and provides that the hijab can be pushed back slightly off of the wearer's face if necessary. Inmates at the County Jail are permitted to wear hijabs while incarcerated.

67.    In Portland, Maine, Cumberland County Sheriff Kevin Joyce publicly apologized after releasing the booking photographs of two Muslim women who had been arrested at a Black Lives Matter protest. The photographs showed each woman without her hijab; Joyce offered his "sincerest apologies ... to the Muslim community for the appearance that we are disrespecting their religious beliefs and practices."[3] The Cumberland County Jail procedures require a woman to remove her hijab only in private, without men present, and provide that two booking photographs will be taken, one with the woman's hijab and another without.

68.    In New York City, New York, three Muslim women reached a settlement with the City on February 26, 2018, pursuant to which the City agreed to pay $180,000 in damages for the forced removal of the women's hijabs pursuant to the New York Police Department photograph policy.[4]

---

[3] *Available* at https://www.pressherald.com/2016/09/14/sheriffs-office-apologizes-for-improperly-releasing-photos-of-muslim-protesters/ (last accessed November 11, 2021).
[4] *Available* at https://www.nytimes.com/2018/02/28/nyregion/muslim-hijab-nypd.html (last accessed November 11, 2021).

69.     Additionally, Louisville, Kentucky and Ramsey County, Minnesota have also changed their religious head covering policies, with the lawsuit against Ramsey County leading to a $120,000 settlement.[5]

## IV.
## Causes of Action

## COUNT I

### Violation of the Religious Land Use and Institutionalized Persons Act Pursuant to 42 U.S.C. § 2000CC et seq. Against Defendant Collin County, Texas

70.     Plaintiff reasserts and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

71.     Under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution … even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person – (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest."

72.     While confining Plaintiff in an institution that receives federal funding, Defendant Collin County substantially burdened the practice of Ms. Benali's religion by requiring her to remove her hijab in the presence of strangers, particularly men.

73.     Specifically, Defendant Collin County receives federal funding for purposes of the operations of its corrections facility.

---

[5] *Ruplinger v. Louisville/Jefferson Cty. Metro Gov't.*, No. 19 Civ. 583 (W.D. Ky. 2019), ECF No. 1-3 ¶ 62; Ted Hennessey, *Woman Allegedly Forced To Remove Hijab for Mugshot Gets $120,000 Settlement*, Evening Standard, Dec. 18, 2019, https://www.standard.co.uk/news/world/muslimwoman-in-minnesota-gets-120-000-settlement-after-allegedly-being-forced-to-remove-her-hijab-for-mugshota4316801.html (last accessed November 11, 2021).

74.     By their actions described above, including by requiring Ms. Benali to remove her religious headscarf, prohibiting her from covering her head in the presence of men, photographing her without covering her head, and then disseminating that photograph to the internet where it could be seen by countless men, Defendant Collin County imposed a substantial burden on Ms. Benali's religious exercise in that they forced her to violate a fundamental tenet of her faith and a central component of her religious practice.

75.     That substantial burden on Ms. Benali's religious exercise neither furthers a compelling governmental interest nor is the least restrictive means of furthering a compelling governmental interest.

76.     *Turner* established a four-factor "rational relationship" test for analyzing the constitutionality of regulations that burden a prisoner's fundamental rights. *Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987).

77.     Under *Turner*'s test, courts must consider (1) whether a "valid, rational connection [exists] between the prison regulation and the legitimate governmental interest put forward to justify it," (2) whether there exist "alternative means of exercising the fundamental right that remain open to prison inmates," (3) what "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally," and (4) whether there is an "absence of ready alternatives" to the regulation in question. *Adkins v. Kaspar*, 393 F.3d 559, 564 (5th Cir. 2004); citing *Turner*, 482 U.S. at 89–90.

78.     There is no rational valid connection between Collin County's policies requiring the removal of hijab for (1) booking photos and (2) detention in the Collin County jail and any legitimate governmental interest in keeping a photographic record or

maintaining security in the jail. First, by forcing Ms. Benali to remove her hijab for the booking photograph, it required her to alter her ordinary appearance before being photographed – since any time in the future if contacted by law enforcement or if being searched for by law enforcement she would be wearing a hijab. Second, the United States Department of State and the Texas Department of Motor vehicles both allowed Ms. Benali to wear her hijab during her passport and driver's license photographs. Third, a hijab would not give a Muslim female inmate an opportunity to conceal contraband anymore than any other female inmate has with the jail issued clothing, including undergarments.

79.     There existed no alternative means of exercising Ms. Benali's right to wear a hijab in public, at all times. Collin County's policy and practice prohibiting hijabs in the jail does not even allow for Ms. Benali to have worn her hijab in her own cell or at a religious service.

80.     Allowing Ms. Benali to wear her hijab as mandated by her strongly held religious beliefs would not have impacted jail staff in any negative way, and to the contrary would have reduced time spent having dialogue with Ms. Benali negotiating the removal of her hijab.

81.     There is not an "absence to ready alternatives" in this situation as provided by the numerous examples in this lawsuit of jails which accommodate Muslim women such as Ms. Benali in allowing them to wear hijab as mandated by their strongly held religious beliefs. This constitutional alternative would have cost Collin County nothing and would have saved them time.

82.     Ms. Benali's passport and driver's license both include her wearing hijab.

83.     It is an accepted practice around the nation for county jails to permit female detainees to wear hijab in their facilities.

84.     It is an accepted practice around the nation for county jails to permit female detainees to wear hijab during book-in photographs.

85.     Accordingly, Defendant Collin County has violated Ms. Benali's rights under RLUIPA.

86.     As a result of Defendant Collin County's conduct, Ms. Benali suffered, and continues to suffer, extreme shame, humiliation, mental anguish, and emotional distress.

87.     Money damages are available under RLUIPA against political subdivisions of states, such as municipalities and counties. *Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 290 (5th Cir. 2012).

88.     WHEREFORE, Ms. Benali prays for the following relief from this Honorable Court:

a.  A declaratory judgment that Defendant Collin County's policies, practices, and procedures substantially burdens arrestees' religious exercise, specifically Muslims like Ms. Benali whose religious faith requires a headscarf to be worn, in violation of RLUIPA;

b.  An injunction prohibiting Defendant Collin County's discriminatory policy or practices that burdens an arrestee's religious exercise, specifically Muslims like Ms. Benali whose religious faith requires a headscarf to be worn, in violation of RLUIPA;

c.  A declaration that Defendant Collin County's policies and practices regarding arrestees' ability to wear a religious headscarf violated Ms. Benali's and other similarly situated Muslims' religious exercise pursuant to RLUIPA;

d.  Money damages;

e.  An award of interest, costs, and reasonable attorney fees in litigating this matter; and

f.  All other relief this Honorable Court deems just and proper.

### COUNT II

**PRACTICE AND CUSTOM OF DELIBERATE INDIFFERENCE**
***Monell v. New York City Department of Social Services***
**Violation of the First and Fourteenth Amendments**
**Pursuant to 42 U.S.C § 1983**
**Defendant Collin County, Texas**

89.     Plaintiffs repeat and re-allege each and every allegation contained in the above paragraphs as if fully repeated herein.

90.     Municipalities and other local governments are "persons" within the meaning of Section 1983 and can therefore be held liable for violating a person's constitutional rights. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978); *Estate of Bonilla v. Orange Cnty.*, 982 F.3d 298, 308 (5th Cir. 2020).

91.     Municipalities are, however, responsible only for "their own legal acts." *Covington v. City of Madisonville, Tex.*, 812 F. App'x 219, 225 (5th Cir. 2020) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986)). They cannot be held liable on a *respondeat superior* theory solely because they employ a constitutional tortfeasor. *Monell*, 436 U.S. at 691–92.

92.     Plaintiffs invoke two alternative theories of liability against Collin County for Ms. Benali's constitutional violations: the "episodic acts and omissions" of County jailers, and the unconstitutional "conditions of confinement" at the County jail. *See Flores v. Cnty of Hardeman, Tex.*, 124 F.3d 736, 738 (5th Cir 1997).

93.     Plaintiff's episodic acts and omissions theory "requires a finding that particular jailers acted or failed to act with deliberate indifference to the detainee's needs" and––notably––that this conduct is attributable to the enforcement of a municipal policy, practice, or custom. *Sanchez v. Young Cnty., Tex.*, 866 F.3d 274, 279 (5th Cir. 2017).

94.     Plaintiff's conditions of confinement theory, in contrast, does not rest on the fault of individual jailers. *Id*. Rather, it challenges the conditions, practices, rules or restrictions of pretrial confinement imposed by Defendant Collin County that, together, "impose[] what amounts to punishment in advance of trial." *Id*.

95.     Under both theories, Plaintiff must show "(1) that a constitutional violation occurred and (2) that a municipal policy was the moving force behind the violation." *Sanchez*, 956 F.3d at 791 (quoting *Monell*, 436 U.S. at 694).

### Episodic Acts or Omissions Claim Against Collin County

96.     In an episodic acts or omissions claim against a municipality, "an actor usually is interposed between the detainee and the municipality, such that the detainee complains first of a particular act of, or omission by, the actor and then points derivatively to a policy, custom, or rule (or lack thereof) of the municipality that permitted or caused the act or omission." *Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997).

97.     To hold a municipal entity liable under this standard, the plaintiff must establish: "(1) a governmental employee acted with subjective deliberate indifference; and (2) the employee's act resulted from a policy or custom adopted or maintained with objective deliberate indifference to the plaintiff's constitutional rights." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 526 (5th Cir. 1999).

98.     An official policy "usually exists in the form of written policy statements, ordinances, or regulations, but may also arise in the form of a widespread practice [of County officials or employees] that is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'" *James v. Harris Cnty.*, 577 F.3d 612, 617 (5th Cir. 2009) (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001)).

99.     Whatever its form, the policy must have been the "moving force" behind the plaintiff's constitutional violation. *Piotrowski*, 237 F.3d at 580 (quoting *Monell*, 436 U.S. at 694).

100.    Stated differently, Plaintiff "must show direct causation, i.e., that there was 'a direct causal link' between the policy and the violation." See *James*, 577 F.3d at 617 (quoting *Piotrowski*, 237 F.3d at 580).

101.    The policy must also have been "promulgated with deliberate indifference to the known or obvious consequences that constitutional violations would result." *Piotrowski*, 237 F.3d at 579 (internal quotation marks omitted).

102.    "A failure to adopt a policy rises to the level of deliberate indifference 'when it is obvious that the likely consequences of not adopting a policy will be a deprivation of civil rights.'" *Evans v. City of Marlin, Tex.*, 986 F.2d 104, 108 (5th Cir.1993) (quoting *Rhyne v. Henderson Cnty.*, 973 F.2d 386, 392 (5th Cir. 1992)).

103.    Establishing deliberate indifference on the part of a municipality generally requires a "pattern of similar violations" arising from a policy "so clearly inadequate as to be 'obviously likely to result in a constitutional violation.'" *Burge v. Saint Tammany Par.*, 336 F.3d 363, 370 (5th Cir. 2003) (quoting *Thompson v. Upshur Cnty.*, 245 F.3d 447, 459 (5th Cir. 2001)). A narrow 'single incident' exception to the pattern requirement, however, has been recognized. *Id.* at 372–73; *Covington,* 812 F. App'x at 225. For deliberate indifference to be based on a single incident, "it should have been apparent to the policymaker that a constitutional violation was the highly predictable consequence of a particular policy." *Alvarez v. City of Brownsville*, 904 F.3d 382, 390 (5th Cir. 2018) (quoting *Burge*, 336 F.3d at 373).

## Conditions of Confinement Claim Against Collin County

104.     A challenge to a condition of confinement is a challenge to "general conditions, practices, rules, or restrictions of pretrial confinement." *Hare v. City of Corinth*, 74 F. 3d 633, 644–45 (5th Cir. 1996).

105.     The issue is whether the conditions "amount to punishment." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979).

106.     As has been explained, "if a restriction or condition is not reasonably related to a legitimate goal––if it is arbitrary or purposeless––a court permissibly may infer that the purpose of the government action is punishment that may not constitutionally be inflicted upon detainees.'" *Bell*, 441 U.S. at 539; *Garza v. City of Donna*, 922 F.3d 626, 632 (5th Cir. 2019).

107.     If Collin County wishes to incarcerate pretrial detainees who hold strongly held religious beliefs requiring them to wear hijab, it has a constitutional responsibility to ensure that its conditions do not amount to "punishment" in advance of trial. And the protections of the First and Fourteenth Amendment do not hinge on whether a detainee practices a religion that does not mandate the wearing of hijab.

108.     To prove a conditions of confinement claim, the plaintiff must show (1) a rule or restriction, an intended condition or practice, or a *de facto* policy as evidenced by sufficiently extended or pervasive acts of jail officials, (2) not reasonably related to a legitimate governmental objective, and (3) that violated [the detainee's] constitutional rights. *Shepherd v. Dallas Cnty.*, 591 F.3d 445, 452, 454–55 (5th Cir. 2009).

109.     In the Fifth Circuit, a conditions of confinement claim "requires no showing of specific intent on the part of the [municipality]." *Sanchez*, 866 F.3d at 279; *Edler v.*

*Hockley Cnty. Comm'rs Ct.*, 589 F. App'x 664, 669 (5th Cir. 2014) ("[U]nlike an episodic-act-or-omission claim, a plaintiff is not required to prove deliberate indifference.").

110.    Although an unlawful condition or practice is often explicit, a "formal, written policy is not required." *Montano v. Orange Cnty., Tex.*, 842 F.3d 865, 875 (5th Cir. 2016); see *Shepherd*, 591 F.3d at 452.

111.    A condition may "reflect an unstated or *de facto* policy, as evidenced by a pattern of acts or omissions 'sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by [jail] officials, to prove an intended condition or practice.'" *Shepherd*, 591 F.3d at 452 (quoting *Hare*, 74 F.3d at 645).

112.    As noted by the Fifth Circuit, "specific [prior] examples are not required to meet the 'conditions or practice' element" when there is consistent testimony of jail employees, *Montano*, 842 F.3d at 877, or the policy maker knows about a misconduct yet fails to take remedial action, *Sanchez*, 956 F.3d at 793–94.

113.    When multiple employees act in the same unconstitutional manner, that is indicative of a *de facto* county policy. *See Sanchez*, 956 F.3d at 793 (finding that evidence that the county's written policies were ignored created fact-issues as to whether the jail had a *de facto* policy of inadequately monitoring intoxicated detainees).

114.    "We do not require a plaintiff to show that a 'policy or practice [was] the exclusive cause of the constitutional deprivation.' Courts 'may . . . consider how individual policies or practices interact with one another within the larger system.'" *See Sanchez*, 956 F.3d at 791.

115.    Municipal liability may attach where the constitutional deprivation is pursuant to a governmental custom, even if such custom has not received formal

approval. *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 166 (5th Cir. 2010) (citing *Monell*, 436 U.S. at 690–91).

116.    The plaintiff may demonstrate a "persistent widespread practice of county officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Zarnow*, 614 F.3d at 168–69 (quoting *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir.1984).

117.    "Under the decisions of the Supreme Court and [the Fifth Circuit], municipal liability under section 1983 requires proof of three elements: a policy maker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski*, 237 F.3d at 578 (citing *Monell*, 436 U.S. at 694).

118.    A municipality "cannot be liable for an unwritten custom unless '[a]ctual or constructive knowledge of such custom' is attributable to a city policymaker." *Pena v. City of Rio Grande City*, 879 F.3d 613, 623 (5th Cir. 2018) (citing *Hicks–Fields v. Harris Cty.*, 860 F.3d 803, 808 (5th Cir. 2017)).

119.    To establish municipal liability under § 1983 based on an alleged "persistent widespread practice or custom that is so common it could be said to represent municipal policy, actual or constructive knowledge of such practice or custom must be shown." *Malone v. City of Fort Worth*, 297 F. Supp. 3d 645, 654 (N.D. Tex. 2018) (citing *Hicks–Fields*, 860 F.3d at 808).

120.    "Constructive knowledge may be attributed to the governing body on the ground that it would have known of the violations if it had properly exercised its responsibilities…" *Hicks–Fields*, 860 F.3d at 808.

121.    The Supreme Court described an actionable *Monell* policy as "a course of action consciously chosen among various alternatives." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985).

122.    Plaintiff invokes alternative theories for Defendant Collin County's liability: the unconstitutional "conditions of confinement" at the Collin County Jail, or the "episodic acts and omissions" of staff at the jail. 312. *Sanchez*, 866 F.3d at 279; *Hare*, 74 F.3d at 644–45.

## Policymaker

123.    Under Texas law, sheriffs are "final policymakers" in the area of law enforcement for the purposes of holding a county liable under § 1983. *James,* 577 F.3d at 617; citing *Williams v. Kaufman County*, 352 F.3d 994, 1013 (2003).

124.    The Sheriff was directly involved with implementing each of the Collin County Sheriff's Department policies and practices discussed in this lawsuit; accordingly, he had actual knowledge of each. *James,* 577 F.3d at 617; citing *Williams*, 352 F.3d at 1013.

125.    Additionally, the Collin County Sheriff had constructive knowledge of the jail's policies and practices requiring inmates such as Ms. Benali to remove her hijab in violation of her strongly held religious beliefs, as the Collin County Sheriff would have known of these practices in the jail had he exercised his responsibilities, especially with regard to book-in, photographing, storing property, and holding detainees in the jail. *Hicks–Fields,* 860 F.3d at 808.

## Unconstitutional Policies and Practices

126.     Pursuant to 42 USC § 1983, Defendant Collin County owed Ms. Benali certain constitutional duties to properly supervise, monitor, and train its officers so as not to intentionally violate the constitutional rights of individuals with respect to exercising their religion while in the Collin County Jail.

127.     Defendant Collin County is liable pursuant to 42 USC § 1983, and *Monell*, 436 US at 658, in that its policies, procedures, regulations, and customs, or that it consciously chose to fail to enact policies, procedures, regulations, and customs, such that such policies, procedures, regulations, and customs, or lack thereof, caused and was the driving force behind the violation of Plaintiff's constitutional rights as alleged in this Complaint.

128.     Defendant Collin County, through its policies, procedures, regulations, or customs, or lack thereof, breached its duties, which amounted to deliberate indifference toward the constitutional rights of the general public, and toward Ms. Benali specifically, in the following ways including, but not limited to:

    i.   Consciously failing to properly train its officers with respect to an arrestees' religious beliefs;

    ii.   Conscious failure to properly train its officers concerning the proper ways to not remove religious headscarves like Ms. Benali;

    iii.   Conscious failure to have proper policies, procedures, and training to deal with a Muslim women's right to free exercise including wearing a religious headscarf;

    iv.   Maintaining a blanket policy that prohibits the wearing of religious headscarves without just cause;

    v.   Maintaining a policy that requires the blanket removal of religious headscarves for booking photographs; and

    vi.   Consciously failing to have policies that accommodate strongly held religious beliefs, such as Ms. Benali's which mandates the wearing of hijab.

129.    Defendant Collin County was thus deliberately indifferent to the rights of others in adopting its training practices, and in consciously failing to supervise its officers such that those failures reflected a deliberate or conscious decision made from various alternatives.

130.    Defendant Collin County was thus deliberately indifferent to the rights of Muslim females by maintaining policies that knowing and deliberately violated Ms. Benali's sincerely held religious beliefs by maintaining a policy which required Ms. Benali to remove her hijab in violation of her strongly held religious beliefs in violation of her First and Fourteenth Amendment rights. *City of Oklahoma City*, 471 U.S. at 823.

131.    Defendant Collin County's above-referenced deficiencies were the moving force that caused Ms. Benali's constitutional deprivation.

132.    If Defendant Collin County had maintained adequate policies and/or properly trained or supervised its officers, the constitutional violation would not have occurred.

133.    Instead, Collin County consciously chose a policy of requiring inmates to remove their religious headscarves without any legitimate governmental objective or penological need, knowing that the removal of hijab is a violation of strongly held religious mandates for many religious people who would be detained in the Collin County jail.

134.    Collin County's conscious decision to enforce this policy violated Ms. Benali's First and Fourteenth Amendment rights to freely exercise her religion. *City of Oklahoma City*, 471 U.S. at 823.

135.    Defendant Collin County's policies, procedures, regulations, and customs, and/or its failure to enact the same, caused and was the driving force behind the violations of Ms. Benali's constitutional rights as alleged in this Complaint.

136.    Upon information and belief, and based off the actions of the book-in officer requiring Ms. Benali to remove her hijab despite it being explained that it was being worn as an exercise of her religion, Defendant Collin County either had a policy expressly prohibiting the wearing of religious headscarves, or had no policy or training in place in how to properly interact with a Muslim female whose known religious beliefs required the wearing of a religious headscarf, which was evident in in this case.

137.    Defendant Collin County's conduct in allowing and adopting the unconstitutional burden on Muslim women's right to free exercise, was done with malice and/or reckless indifference towards Ms. Benali's First Amendment rights and Fourteenth Amendment rights as Collin County knew that by forcing inmates such as Ms. Benali in this case to remove their hijabs it would violate their strongly held religious beliefs without there being any legitimate penological need, and such was provided for by either Defendant Collin County's existing policies, or the conscious decision to have a  lack thereof.

138.    As a direct and proximate result of the above-referenced unlawful and unconstitutional conduct, Ms. Benali has suffered and will continue to suffer actual damages and mental anguish, emotional distress, humiliation, mortification, and embarrassment.

139.    These damages were not caused by any other means.

## COUNT III

### Free Exercise of Religion
### Violation of the First Amendment Pursuant to 42 U.S.C. § 1983
### Against Defendant Collin County, Texas

140.    Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

141.    The First Amendment guarantees that "Congress shall make no law respecting an establishment of religion or prohibiting the free exercise thereof." U.S. Const. amend. I.

142.    Plaintiff brings this First Amendment claim pursuant to 42 U.S.C. § 1983.

143.    Inmates retain some degree of protection afforded by the First Amendment, including protection under its directive that no law shall prohibit the free exercise of religion.

144.    While temporarily detained at Collin County Jail, Defendant imposed a substantial burden on conduct mandated by Plaintiff's religious belief by ordering her to take off her hijab in front of males and making her wear a short sleeve shirt. Through Defendant's actions, Plaintiff was forced to modify her behavior and to seriously violate her religious beliefs. As a result, Plaintiff's exercise of her religion was substantially burdened.

145.    The dissemination and posting of Plaintiff's booking photo without hijab online further violated Plaintiff's rights. Defendant's interference with Plaintiff's rights was more than an inconvenience or short-term occurrence, but rather meaningfully curtailed Plaintiff's ability to express adherence to her faith both while she was detained and long after she was released.

146.    The acts and omissions of Defendant Collin County constitute unreasonable restrictions on Plaintiff's clearly established right to exercise her religion, as guaranteed by the First Amendment to the United States Constitution.

147.    Under Texas law, sheriffs are "final policymakers" in the area of law enforcement for the purposes of holding a county liable under § 1983. *James,* 577 F.3d at 617; citing *Williams*, 352 F.3d at 1013.

148.    The Sheriff was directly involved with implementing each of the Collin County Sheriff's Department policies and practices discussed in this lawsuit; accordingly, he had actual knowledge of each. *James,* 577 F.3d at 617; citing *Williams*, 352 F.3d at 1013.

149.    Additionally, the Collin County Sheriff had constructive knowledge of the jail's policies and practices requiring inmates such as Ms. Benali to remove her hijab in violation of her strongly held religious beliefs, as the Collin County Sheriff would have known of these practices in the jail had he exercised his responsibilities, especially with regard to book-in, photographing, storing property, and holding detainees in the jail. *Hicks–Fields,* 860 F.3d at 808.

150.    Plaintiff has been subjected to and injured by these alleged violations and suffers from emotional distress, humiliation, embarrassment, and other serious damages as a direct and proximate result of Defendant Collin County's acts and omissions specifically set forth above.

**COUNT IV**

**Equal Protection Violation**
**Violation of the Fourteenth Amendment Pursuant to 42 U.S.C. § 1983**
**Against Defendant Collin County, Texas**

151.    Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

152.    The Fourteenth Amendment guarantees that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

153.    Plaintiff brings this Fourteenth Amendment claim pursuant to 42 U.S.C. § 1983.

154.    The Equal Protection Clause requires the State to treat all similarly situated people equally. Moreover, the Equal Protection Clause entitles each detainee to reasonable opportunity to pursue her or his faith comparable to the opportunity afforded to fellow detainees who adhere to conventional religious precepts.

155.    Religion is a suspect classification.

156.    When Defendant Collin County's policies, practices, and failures to train caused Plaintiff to be treated differently from similarly situated detainees and discriminated against her based on her religion and dress, Plaintiff was denied her clearly established right to equal protection.

157.    The acts and omissions of Defendant Collin County constitutes religious discrimination in violation of the clearly established Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

158.    Under Texas law, sheriffs are "final policymakers" in the area of law enforcement for the purposes of holding a county liable under § 1983. *James,* 577 F.3d at 617; citing *Williams,* 352 F.3d at 1013.

159.    The Sheriff was directly involved with implementing each of the Collin County Sheriff's Department policies and practices discussed in this lawsuit; accordingly,

he had actual knowledge of each. *James,* 577 F.3d at 617; citing *Williams*, 352 F.3d at 1013.

160.   Additionally, the Collin County Sheriff had constructive knowledge of the jail's policies and practices requiring inmates such as Ms. Benali to remove her hijab in violation of her strongly held religious beliefs, as the Collin County Sheriff would have known of these practices in the jail had he exercised his responsibilities, especially with regard to book-in, photographing, storing property, and holding detainees in the jail. *Hicks–Fields,* 860 F.3d at 808.

161.   Plaintiff was subjected to and injured by these alleged violations and suffers from emotional distress, humiliation, embarrassment, and other serious damages as a direct and proximate result of Defendant's acts and omissions specifically set forth above.

## V.
## DAMAGES

162.   Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

163.   Plaintiff's injuries were a foreseeable event. Those injuries were directly and proximately caused by Defendant Collin County's deliberate indifference shown toward Ms. Benali.

164.   As a direct and proximate result of the occurrence which made the basis of this lawsuit, Plaintiff has been forced to suffer:

    a.   Actual damages;
    b.   Mental anguish, torment; and emotional distress.

165.   Pursuant to 42 U.S.C. § 1983 and 1988, Plaintiff seeks to recover, and hereby requests the award of reasonable attorney's fees and costs of court.

## VI.
## <u>ATTORNEY'S FEES</u>

166.    If Plaintiff prevails in this action, by settlement or otherwise, Plaintiff is entitled to and hereby demand attorney's fees under 42 U.S.C. § 1988.

## VII.
## <u>JURY REQUEST</u>

167.    Plaintiff respectfully requests a jury trial.

## <u>PRAYER</u>

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that judgment be rendered against Defendant, for an amount in excess of the jurisdictional minimum of this Court. Plaintiff further prays for all other relief, both legal and equitable, to which he may show herself justly entitled.

Respectfully submitted,

*/s/ Scott H. Palmer*
SCOTT H. PALMER,
Texas Bar No. 00797196

*/s/ James P. Roberts*
JAMES P. ROBERTS,
Texas Bar No. 24105721

SCOTT H. PALMER, P.C.
15455 Dallas Parkway, Suite 540
Addison, Texas 75001
Telephone: 214.987.4100
Facsimile: 214.922.9900
scott@scottpalmerlaw.com
james@scottpalmerlaw.com

COUNSEL FOR PLAINTIFF